**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**STEVEN A. FREZZA,**

                    **Plaintiff,**

**v.**

                                                             **19-CV-198-HKS**

**ANDREW SAUL, Acting**
**Commissioner of Social Security,**

                    **Defendant.**

_____


### DECISION AND ORDER

                Plaintiff, Steven Frezza, brings this action pursuant to the Social Security

Act ("the Act") seeking review of the final decision of Acting Commissioner of Social

Security (the "Commissioner"), which denied his application for supplemental security

income ("SSI") under Title XVI of the Act.  Dkt. No. 1.  This Court has jurisdiction over

this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition

of this case by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No. 12.


                Both parties have moved for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c).  Dkt. Nos. 7, 8.  For the reasons that follow,

Defendant's Motion for Judgment on the Pleadings (Dkt. No. 8) is GRANTED and

Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 7) is DENIED.


### BACKGROUND

On September 11, 2014, Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") alleging disability beginning on September 11, 1990, due to: Scoliosis; Back Rods; Chronic Back Pain; Cerebral Palsy; ADHD; ODD; Anxiety; Depression; and Conduct Disorder.  Tr.[1] 76, 159-162, 163-168. On April 30, 2015, Plaintiff's claims were denied by the SSA at the initial level and he requested review.  Tr. 75-87, 88-92, 96-98.  On September 12, 2017, Plaintiff appeared with his attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Mary Mattimore ("the ALJ").  Tr. 29-69.  On February 5, 2018, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 9-27.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on December 18, 2018. Tr. 1-6.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

---

[1] References to "Tr." are to the administrative record in this matter.  Dkt. No. 4.

adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.   **The ALJ's Decision**

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found Plaintiff had not engaged in

substantial gainful activity since September 11, 2014, the alleged onset date.  Tr. 14.
At step two, the ALJ found Plaintiff has the following severe impairments:  history of
congenital spine deformity and corrective surgery, cerebral palsy, personality disorder
(also diagnosed as oppositional defiant disorder ("ODD"), reactive attachment disorder,
and/or conduct disorder), and attention deficit/hyperactivity disorder ("ADHD").  *Id.*  At
step three, the ALJ found that these impairments, alone or in combination, did not meet
or medically equal any listings impairment.  Tr. 15-16.

Next, the ALJ determined Plaintiff retained the RFC to perform a limited
range of light work.[2]  Tr. 16-21.  Specifically, Plaintiff can lift up to ten pounds
continuously, twenty pounds occasionally, and is able to carry up to ten pounds
frequently.  Tr. 11.  Plaintiff can sit for a total of six hours in a workday, but only for three
hours at any one time and is able to stand and/or walk for three total hours in a
workday, but only for forty-five minutes at any one time.  *Id.*  Plaintiff can frequently
reach in all directions; can frequently push/pull bilaterally; can occasionally climb ramps
and stairs, can occasionally stoop, kneel, and crouch; but never crawl, or climb ladders
and scaffolds.  *Id.*  Plaintiff can tolerate occasional exposure to moving mechanical
parts and unprotected heights and can occasionally operate motor vehicles.  *Id.*  Plaintiff
is able to understand, remember and carry out simple routine tasks and make simple

---

[2]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls.  To be considered
capable of performing a full or wide range of light work, you must have the ability to do
substantially all of these activities.  If someone can do light work, we determine that he or she
can also do sedentary work, unless there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time."  20 C.F.R. 416.967(b).

workplace decisions; can tolerate occasional interaction with supervisors, coworkers, and the public, but cannot perform tandem or team work (that is, the claimant is able to work independently and generally isolated from coworkers and the public); and can tolerate occasional changes in work routines, processes and settings.  *Id.*

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 21.  At step five the ALJ concluded, based on the VE's testimony in consideration of Plaintiff's age, education, work experience, and RFC, that Plaintiff was capable of performing other work existing in significant numbers in the national economy.  *Id.*  Specifically, the ALJ found Plaintiff could perform the following jobs:  "Merchandise Marker" and "Material Distributor."  Tr. 21-22.  Accordingly, the ALJ found Plaintiff was not disabled under the Act from September 11, 2014, through February 5, 2018.  Tr. 22.

## II.    Analysis

Plaintiff argues that remand is warranted because the ALJ erred in evaluating medical evidence in support of the Physical RFC.  Dkt. No. 7 at 12.  The Commissioner contends the ALJ's decision is supported by substantial evidence and should be affirmed.  Dkt. No. 8 at 9.

This Court finds that substantial evidence supports the ALJ's finding that Plaintiff can perform a limited range of light, unskilled work.  The ALJ considered relevant medical records and opinions of examining physicians in determining Plaintiff's

physical RFC.  "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (summary order).

First, Plaintiff argues that the ALJ failed to afford controlling weight to the opinion of his treating physician, James Rummel, DO ("Dr. Rummel"), in accordance with the treating physician rule.  Dkt. No. 7 at 12-18.

Under Second Circuit precedent and the applicable Social Security Regulations, an ALJ must follow a two-step procedure in evaluating the medical opinion of a treating physician.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  First, the ALJ determines whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  *Id.*  If these criteria are satisfied, then the opinion is "entitled to controlling weight."  *Id.*  If not, then the ALJ proceeds to the second step, determining "how much weight, if any, to give" the opinion.  *Id.* Specifically, at step two the ALJ must consider the following factors: "(1)the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Id.* at 95-96 (citing *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.2013) (per curiam) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir.2008) (citing 20 C.F.R. § 404.1527(c)(2)))).  The ALJ must provide "good reasons"

regarding the weight assigned to a treating physician's medical opinion at both steps. *Id.* at 96. (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2))).

In her decision, the ALJ considered Dr. Rummel's opinion authored during a September 10, 2014 examination of Plaintiff.  Tr. 19.  Dr. Rummel noted that Plaintiff was being seen for a DSS physical and was seeking blood-borne disease testing and topical ointment with lidocaine for chronic back pain caused by scoliosis/Harrington rods.  Tr. 305.  The doctor opined the following regarding Plaintiff's functional ability in consideration of his chronic back pain:

> "Patient has a job track physical form to be filled out.  Due to his back issues he is clearly disabled.  He is unable to lift, bend, squat, climb, push or pull.  His max lifting weight is less than 10 pounds.  He is unable to stay in one position very long due to the pain.  In fact, multiple times he changes position during the interview and exam."

Tr. 305.  The ALJ accorded "only partial weight" to Dr. Rummel's opinion.  Tr. 19.

As an initial matter, this Court notes that no deference is owed to the doctor's statement that Plaintiff was "clearly disabled."  *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.") (internal quotation omitted).  The ultimate finding of whether a claimant is disabled and cannot work is reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(1).

"An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight" to a treating physician's opinion that has not been accorded controlling weight at step two is a "procedural error." *Estrella*, 925 F.3d at 96.  Unless the ALJ has "otherwise provided good reasons" for the weight assigned, "[the Court] will be unable to conclude that the error was harmless and [will] consequently remand for the ALJ to comprehensively set forth [good] reasons." *Id.*  However, if "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed, [the Court] will affirm." *Id.*

In support of according Dr. Rummel's opinion less-than controlling weight, the ALJ reasoned: (1) the opinion lacks support and appeared to be based largely on Plaintiff's subjective complaints rather than clinical signs; (2) the opinion was conclusory and premature where it was rendered prior to Plaintiff's evaluation and treatment with an orthopedist; (3) the opinion conflicted with the opinion provided by consultative examiner, Michael Rosenberg, MD, ("Dr. Rosenberg"), whose opinion incorporated diagnostic imaging and contemporaneous objective findings in support; and (4) the opinion conflicted with objective medical evidence including Plaintiff's treatment records and imaging of Plaintiff's spine rendered through treatment with surgeon, Jeffrey Lewis. Tr. 18-19.

It is well established that an ALJ may give the treating physician's opinion less weight when the opinion is internally inconsistent or inconsistent with other substantial evidence in the record.  *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d

Cir. 2017) (summary order) ("Although a treating physician's assessment is typically given more weight than other examiners' assessments, internal inconsistencies, and the conflicting opinions of other examining physicians, where supported by evidence in the record, can constitute substantial evidence to support not according the treating physician's opinion controlling weight, as well as good reasons to attribute only limited weight to that opinion.") (citation omitted); *see also* 20 C.F.R. § 404.1527 (c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we give to that opinion.").  It is also appropriate to afford less weight to an opinion that is not thoroughly explained or supported by objective medical evidence. *See* 20 C.F.R. § 404.1527 (c)(3) (explaining that the degree of weight given to a medical opinion is affected by the amount of medical evidence and the quality of the explanation supporting the opinion).

Here, the ALJ explained that she found Dr. Rummel's 2014 opinion that Plaintiff is unable to lift, bend, squat, climb, push, pull or lift more than 10 pounds, inconsistent with Dr. Rosenberg's subsequent 2015 opinion that Plaintiff had "very mild limitations in heavy lifting, carrying heavy objects, and prolonged bending."  Tr. 18.  Dr. Rosenberg's opinion was supported by his findings on examination of Plaintiff including: normal gait, ability to walk on heels and toes without difficulty, normal stance, no assistive devices, ability to rise from chair without difficulty, full strength (5/5) in upper and lower extremities, but decreased range of motion of lumbar spine with squat ability limited to thirty percent due to "back pain."  Tr. 336-337.  The ALJ also noted that Dr. Rosenberg examined the Plaintiff again in July 2017, after Plaintiff's 2016 and 2017

surgical procedures and observed that the objective examination findings were largely unchanged since his previous examination in 2015. Tr. 18. Here, Dr. Rosenberg opined Plaintiff has mild to moderate restrictions that entail prolonged squatting, kneeling, bending and heavy lifting and carrying secondary to his mild to moderate back pain; and completed a detailed function-by-function analysis upon which the ALJ relied in assessing Plaintiff's physical RFC. Tr. 355, 358-62, 18.

The ALJ also considered Plaintiff's treatment records with Dr. Lewis, who provided specialized spinal care to Plaintiff beginning in 2015 through October 2017. Tr. 18-19. After obtaining the updated imaging of Plaintiff's spine, including lumbar (Tr. 413) and thoracic (Tr. 411) MRI scans and a thoracolumbar reconstruction CT scan (Tr. 412), Dr. Lewis concluded that Plaintiff's spinal hardware was in-tact and functioning; however, he observed adjacent segment disease and discogenic pain at L3-4 and L4-5, and believed a lateral collapse at L4-5 was the cause of Plaintiff's ongoing low lumbar pain. Tr. 406-8. Dr. Lewis recommended minimally invasive oblique lateral lumbar fusion at L3-4 and L4-5, which he performed for Plaintiff on January 28, 2016. Tr. 409.

Upon examination in February, 2017, Plaintiff reported worsening back pain and Dr. Lewis observed a fractured screw at L5 on Plaintiff's most recent lumbar X-ray, concluding that it would need to be removed after obtaining a reconstruction lumbar CT scan to determine the exact location of the screw. Tr. 436-37. Dr. Lewis also noted Plaintiff's report that he was looking for a new pain management physician. Tr. 436. Dr. Rummell was no longer his treating provider and was no longer providing Plaintiff

with prescription narcotics for his chronic back pain.  Plaintiff underwent an updated CT

scan on March 14, 2017, which revealed no loosening of the spinal hardware, no

significant spinal stenosis, no foraminal stenosis in the lumbar spine and no disc

protrusions.  Tr. 438.  However, a few days later on March 17, 2017, Plaintiff was

examined by Anthony Gagliardo, PA-C ("PA Gagliardo") who reviewed Plaintiff's

updated lumbar CT with Dr. Lewis and concluded that Plaintiff had fractured pedicle

screws at L3 on the right and L5 on the left, which required surgical removal.  Tr. 439-

40.  On May 30, 2017, Plaintiff underwent surgery to remove the fractured screws,

performed by Dr. Lewis and PA Gagliardo.  Tr. 441.


On June 13, 2017, Plaintiff was evaluated postoperatively by Edward

Vargo, PA-C ("PA Vargo") and complained of some pain in his left leg.  Tr. 446.  Excess

fluid was aspirated from the operative site, and his Oxycodone prescription was

renewed.  Tr. 446.  On June 21, 2017, Plaintiff went to the emergency room

complaining of lumbar back pain radiating down his left leg.  Tr. 481.  Plaintiff received a

lumbar CT scan and Radiologist, Alexandra Wesley ("Dr. Wesley"), observed

postsurgical changes, no fracture or gross spinal stenosis; but severe right foraminal

stenosis at T-10-T11 and T11-T12; and left foraminal stenosis at L3-L4.  Tr. 448.

Plaintiff was discharged from the emergency room and instructed to follow up with Dr.

Lewis and his primary care provider regarding pain management for foraminal stenosis.

Tr. 483.

On July 27, 2017, Plaintiff was examined again by consultative examiner, Dr. Rosenberg, where he reported constant back pain made worse with walking, standing, sitting, and bending; radiating from the lower back to the left leg.  Tr. 353.  He reported being able to do light cleaning, shower, and dress himself, but could not do laundry.  *Id.*  Dr. Rosenberg observed normal gait and stance with ability to rise from a chair without difficulty; but limited ability to squat due to back pain and inability to walk on heels and toes.  *Id.*  The doctor also noted that he was unable to detect if Plaintiff has scoliosis because Plaintiff would not let him touch his back/spine, but noted pain with range of motion of the lumbosacral spine.  Tr. 355.  He diagnosed Plaintiff with back pain, mild to moderate and assessed mild to moderate restrictions for prolonged squatting, kneeling, bending, and heavy lifting and carrying.  *Id.*  Dr. Rosenberg also completed a detailed function-by-function analysis report and medical source statement assessing Plaintiff's physical ability to do work-related activities.  Tr. 357-362.  For example, he found Plaintiff could continuously lift up to ten pounds; occasionally lift eleven to twenty pounds; and never lift more than twenty-one pounds.  Tr. 357.  Dr. Rosenberg also opined Plaintiff could frequently carry up to ten pounds, but nothing over eleven pounds.  *Id.*

On August 11, 2017, shortly before his administrative hearing, Plaintiff was seen at Dr. Lewis's office by PA Vargo, and reported ongoing left leg pain.  Tr. 450. PA Vargo noted that the CT scan was reviewed and that an MRI was recommended to evaluate for seroma and to look at the neural foramen, particularly on the left at L3-4, with Plaintiff to follow-up with Dr. Lewis to review the MRI results.  Tr. 451.  The ALJ

13

agreed to hold open the record, at Plaintiff's request, for the submission of additional

medical evidence.  Tr. 46, 257-269.

On October 18, 2017, after the administrative hearing, Dr. Lewis examined

Plaintiff, reviewed MRI results from Dr. Horsley and the CT scan performed by Dr.

Wesley; and recommended another surgery, a foraminotomy at L3-4 on the left.  Tr.

550.  Dr. Lewis found the MRI scan showed foraminal stenosis at L3-4 on the left, but

was poorly reported by radiologist, Dr. Horsley.  Tr. 550.  He also noted the severe

foraminal stenosis that Dr. Wesley observed at T10-T11 and T11-T12 was the area that

has been fused by the scoliosis surgery.  Tr. 550.   Dr. Lewis concluded that the left L3-

4 foraminal stenosis that Dr. Wesley observed on Plaintiff's CT scan correlates very well

with Plaintiff's left anterior thigh pain that goes to the knee.  Tr. 550.

Here, Plaintiff contends that the ALJ should have contacted Dr. Lewis for

an opinion regarding his functional limitations.  Dkt. No. 7 at 22.  This Court disagrees.

It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed

by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).   "Where there

are no obvious gaps in the administrative record, and where the ALJ already possesses

a complete medical history, the ALJ is under no obligation to seek additional information

in advance of rejecting a benefits claim."  *Rosa*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999).

The ALJ's reliance on detailed treatment notes and objective medical records from Dr.

Lewis in addition to medical opinions from Dr. Rosenberg (including a detailed function-

by-function analysis) and Dr. Rummel, constitute substantial evidence in support of the physical RFC determination.

## CONCLUSION

For these reasons, Defendant's Motion for Judgment on the Pleadings (Dkt. No. 8) is GRANTED.  Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 7) is DENIED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:        Buffalo, New York
              August 31, 2020

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**